Lisa J. Counters, Esq., SBN #016436
Amanda D. Crutchfield, Esq., SBN #021735
8014 E. McClain, Suite 220
Scottsdale, Arizona 85260
Telephone: (480) 634-8017
Facsimile: (888) 247-4023
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sunday L. Messina, individually and as next of friend of D.M., <br><br> Plaintiff, <br><br> v. <br><br> Aetna Health Inc.; The Health Insurance Plan of Paychex Business Solutions, Inc., <br><br> Defendants. | Case No.: <br><br> **COMPLAINT** |

## **JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), pursuant to 29 U.S.C. §§ 1132(e) and (f) and 28 U.S.C. § 1331.

2. Venue is proper under 29 U.S.C. § 1132(e) because Defendants are found in this District.

## **PARTIES**

3. Defendant Aetna Health Inc. ("Aetna") is a corporation with its principal place of business in Florida.

1

4. Defendant Health Insurance Plan of Paychex Business Solutions, Inc. (the "Plan") purchased health insurance from Aetna and therefore constitutes an Employee Health Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

5. On information and belief, Aetna exercised authority to make final decisions regarding the payment of medical benefit claims for the Plan. Accordingly, Plaintiff Sunday L. Messina ("Mrs. Messina") is informed and believes that Aetna is a plan administrator that is either a "named fiduciary" of the Plan pursuant to 29 USC § 1133(2); and/or a "deemed fiduciary" pursuant to 29 USC § 1002(21)(A); and/or a "designated fiduciary" pursuant to 29 USC § 1105(c)(1)(B).

6. At all relevant times, Mrs. Messina was a participant and beneficiary of the Plan, and D.M., as a dependent child of Mrs. Messina, is entitled to benefits under the Plan.

**FACTUAL ALLEGATIONS**

7. Angel Jet Services, LLC ("AJS") is a worldwide fixed-wing air ambulance service provider. AJS utilizes medically customized specialty aircraft to transport patients.

8. AJS's services include flight coordination, patient assistance, coordination between sending and receiving medical providers, and transportation from one facility to another facility under the care of trained professional medical service providers (including critical care nurses) throughout the entire transport.

9. On June 2, 2010, D.M. underwent surgery in Belfast, Maine to repair a meniscus tear in his left knee. He began experiencing constant pain, edema, warmth and erythema of the knee, however, and was again hospitalized at Waldo County General Hospital ("WCGH") four days later on June 6, where he was diagnosed with a post-operative infection. Due to D.M.'s special psychological, pediatric, and orthopedic needs, as well as WCGH's inability to successfully treat D.M.'s infection,

2

his treating physicians concluded D.M. would need to be transferred to another care center.

10. On June 13, 2010, D.M.'s father, Sal Messina ("Mr. Messina"), contacted AJS about performing emergent transport for D.M. AJS immediately began coordinating the ambulance services in light of D.M.'s diagnosis and his physicians' instructions, as time was of the essence.

11. On June 14-15, 2010, AJS transported D.M. via air ambulance from WCGH in Belfast, Maine to Tampa General Hospital ("TGH") in Tampa, Florida. TGH was able to provide access to infectious disease consultants and pediatric psychiatry, both of which were unavailable at WCGH.

12. Due to D.M.'s serious medical condition, AJS's medical providers flew to Belfast, Maine and then escorted and cared for D.M. throughout his air ambulance flight and ground transport. The medical providers constantly monitored D.M.'s vitals and provided pain relief as necessary, among other things.

13. AJS performed the services for which it was retained and D.M. was safely transported over 1,300 miles to TGH as authorized and requested by his physicians.

14. D.M.'s treating physician specifically noted that the air transport as provided by AJS was medically necessary.

15. Approximately eight days after the completion of the transport, AJS submitted a 1500 Health Insurance Claim Form to Aetna for $303,140 for its services provided to D.M.

16. The services rendered by AJS were benefits to which D.M., as a child dependent of Mrs. Messina, was entitled under the terms of the Plan.

17. Aetna adjudicated AJS's 1500 Health Insurance Claim Form on July 29, 2010, denying benefits. Aetna did not send notice of its decision. AJS nevertheless

3

1 learned on August 4, 2010, after accessing Aetna's website to check on the Claim's
2 status, that Aetna had denied the Claim on the basis that the services were not medically
3 necessary.

4     18. On September 20, 2010, AJS appealed the adverse determination by
5 letter. On October 6, 2010, Aetna wrote a letter stating, in part: "After a diligent search
6 for the claims records of D.M. using the information you provided, we have come up
7 with no claim records for this insured for the time period specified in your request."
8 AJS's General Counsel responded by letter dated November 4, 2010, and pointed out
9 that ". . . we [AJS] have received no information from Aetna regarding this claim,
10 which is obviously part of the problem."

11     19. On November 24 and 30, 2010, Aetna faxed AJS a generic and
12 uninformative Claim Status Information sheet denying the Claim on the basis that
13 "DNM Service(s) not medically necessary."

14     20. On December 6, 2010, AJS sent Aetna a First Document Request. Aetna
15 ignored the request.

16     21. Thereafter, on April 19, 2011, AJS again appealed the adverse benefit
17 determination. Aetna responded by letter dated May 3, 2011, upholding its prior
18 decision.

19     22. AJS sent Aetna a Second Document Request on May 19, 2011. Aetna
20 finally responded (although inadequately) to the document requests by letter dated June
21 20, 2011.

22     23. The adverse determinations by Aetna lacked any supporting analysis or
23 documentation.

24     24. Aetna's denial does not adequately contain the basis of denial, adhere to
25 time limits applicable to decisions on claims and appeals, provide documents requested
26
27
28

4

under 29 C.F.R. § 2560.503-1(h)(3)(ii)-(iv), or provide other information required under ERISA claims regulations.

25. Mrs. Messina has satisfied all of the jurisdictional prerequisites, including exhaustion of administrative remedies, to filing a claim in federal court.

## COUNT I
## RECOVERY OF INSURANCE AND PLAN BENEFITS
### (Against Aetna & the Plan)

26. Mrs. Messina incorporates and realleges each and every allegation contained in the foregoing paragraphs as if set forth fully herein.

27. A participant is entitled to recover benefits under the terms of the plan, to enforce rights under the terms of the plan, and to clarify rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B).

28. A civil action may be brought by a participant (A) to enjoin any act or practice which violates any provision of Title I of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of Title I of ERISA or the terms of the plan.  29 U.S.C. § 1132(a)(3).

29. Mrs. Messina reasonably expected that the services were covered and met any applicable requirements under the Plan and that benefits would be awarded.

30. Despite having coverage for air ambulance services under Mrs. Messina's Plan, Aetna improperly denied benefits to D.M. in breach of the Plan.  This breach was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence and was clearly erroneous and in violation of § 503 of ERISA.

31. Aetna's decision on behalf of the Plan was tainted by a structural conflict of interest that requires that its decision be reviewed with increased skepticism.

32. Aetna's procedural violations of ERISA and its regulations require that the decision be reviewed with increased skepticism.

5

## COUNT II
## FAILURE TO PRODUCE PLAN DOCUMENTS
### (Against Aetna)

33. AJS incorporates and realleges each and every allegation contained in the previous paragraphs as if set forth fully herein.

34. Section 104(b)(4) of ERISA, 29 U.S.C. § 1024(b)(4), provides in pertinent part: The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, and terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

35. Failure of the Plan Administrator to provide plan documents within 30 days under 29 U.S.C. 1132(c)(1)(B), exposes the Plan Administrator to a penalty of up to $110 per day from the date of the failure to provide documents.

36. Aetna is the Plan Administrator.

37. If Aetna is not the Plan Administrator as alleged, then it is the de facto plan administrator and is subject for penalties for failure to produce plan documents.

38. By the acts and omissions set forth above, among other procedural violations, Aetna violated ERISA's disclosure requirements, claims procedure requirements, and applicable regulations. As a result of Aetna's acts and omissions, Mrs. Messina has been damaged. Mrs. Messina's attempt to submit the claim for benefits for D.M. under the Plan, have been thwarted, prejudiced, and delayed.

39. Pursuant to ERISA §§ 502(a)(3) and 502(c)(1)(B), Mrs. Messina is entitled to declaratory, injunctive, and other appropriate equitable relief to redress Aetna's and the Plan's claims procedures and disclosure violations, including, but not limited to, an order enjoining Aetna from failing to follow ERISA claims procedures, and to civil monetary penalties for each day beyond thirty that the Plan Administrators refused to provide documents, together with attorneys' fees and costs.

**WHEREFORE,** Mrs. Messina demands judgment against Defendants:

A. Declaring that Mrs. Messina is entitled to payment of services rendered to D.M. in the amount of $303,140 as a result of Defendants' violation of the terms of the Plan and ERISA by failing to pay for the services AJS rendered to D.M.;

B. Declaring that Defendants violated ERISA's claims procedures and disclosure requirements, ERISA § 503 and regulations thereunder;

C. Enjoining Defendants to cease and desist from violating ERISA and the terms of the Plan;

D. Awarding Mrs. Messina $110 per day for each day beyond thirty that Defendants failed to provide her with a copy of the SPD or other documents that constitute plan documents;

E. Awarding pre-judgment interest to Mrs. Messina at the highest rate allowable by law;

F. Awarding AJS its reasonable attorneys' fees and costs pursuant to state law and ERISA § 502(g); and

G. Awarding AJS such other and further relief as the court deems just and proper.

Dated this 1st day of August, 2011.


By    /s Lisa J. Counters
         Lisa J. Counters, Esq.
         Amanda D. Crutchfield, Esq.